## EDWARD WRIGHT'S LESSEE v. JEREMIAH CANNON et al.

Court of Common Pleas.  November, 1794.

*Wilson's Red Book, 41.*\*

---

\* For a report of this case on appeal see *Wilson's Red Book, 240.*

*Wilson* for plaintiff. The design of the statute 21 Geo. II, 1, 9, by which landlords are made defendants with or without the tenants, was to prevent the tenants colluding with strangers to the injury of the owner of the soil; but if the statute should be construed as admitting any person choosing to be made defendant and claiming title to the lands, the purpose intended by the statute would be defeated; therefore, none but actual landlords have

been admitted defendants. 2 Esp.N.P. 165, 2 Cromp. 172, Barnes 193. The deed made to Sluby and Smith was not signed until since the commencement of this action, so that they had not even a claim to the lands, until since the action brought, and a landlord, made so after action brought, has no remedy under the statute; the deed, if even made prior to the commencement of the action, does not prove them actual landlords; payment of rent, or attornment of the tenant, or proof of a lease will alone answer that purpose.

*Ridgely* and *Bayard* for defendants. Payment of rent cannot be proved because a term has not expired. After a deed signed by Jeremiah Cannon, he could never say he held adversely to the grantees. Justice cannot be attained unless they are admitted defendants, for plaintiff has shown from 1 Morg.Ess. 365 that Jeremiah Cannon cannot give this deed in evidence. Sluby and Smith's title and deed have relation to the time of sale. A deed which has no effect until enrolment from thence shall operate by relation to the date thereof. One joint tenant copyholder surrenders to the use of his will; the devisee shall take from the surrender. Admittance relates to the surrender, 5 Burr. 2785. It is the practice not to let judgment go against casual ejector, but on proof of notice not only to the tenant but to the person interested. In Barnes 193, the devisee was not allowed to defend because his testator did not die possessed, but, in 4 Term 122, it is otherwise where the testator died seised.

*Miller* concluded for plaintiff. It is not denied that he must be actual landlord who can be made defendant. In copyholds the surrender gives the title and declares the use. Here it is the deed gives the title by the Act of Assembly. Sluby and Smith were not concerned when the action commenced and, therefore, not actual landlords etc.

Per Curiam. Let the rule be made absolute.

Next morning the jury were sworn. *Wilson* for plaintiff read to the jury the docket entry of a judgment obtained by plaintiff against Hubbert's administrators in August, 1782, a *scire facias* thereon, and judgment and the several writs and returns and sale of personal property, *fieri facias* for residue and inquisition and *venditioni exponas* and sale of the lands and sheriff's deed, and then showed Peter Hubbert's title by warrant granted him and regular return thereon, certified from the surveyor general's office, and then, by parol evidence, proved the first defendants to be possessed of the lands.

*Ridgely,* then, for defendants stated the insolvency of Peter Hubbert's estate, the administration by Jeremiah Cannon and

K. W., the petition, order, sale of the lands, return and the administrators' deed; that the administrators were the officers of the Orphans Court *quoad hoc;* that the only question was which sale should be preferred, which was a question of law, and prayed the jury to find the matter specially. *Bayard* then asked plaintiff's counsel if they would agree upon minutes to be found by the jury, which they refused, saying there were facts of fraud which appeared from the antedated deed. He then swore Mr. Bassett who said he believed the date of the deed was put to it when he examined it before it was signed in the spring.

Defendants' counsel moved the court for their direction to the jury to find specially, and cited 1 P.Wms. 212. But plaintiff's counsel, insisting that although the court might direct, yet it was still optional with the jury (*vide* 5 Bac.Abr., title "verdict").

McDONOUGH, J., proposed that it should be left with the jury to declare how they should find, generally or specially. It was agreed to by both parties, and the jury said they would find specially. Accordingly, a special verdict was drawn up and signed by *Miller* and *Bayard,* and all of the jury.

[Special Verdict of Jury.]

*Richard Fairclaim, Lessee of Edward Wright,*
*v.*
*Jeremiah Cannon, Edward Brown, John Moore,*
*Joshua Shiles, Nathaniel Bell, William Sluby*
*and John Smith.*

In the Court of Common Pleas for the County of Sussex of November Term, 1794.

Ejectment for a tract of land called Hubbert's Regulation with the appurtenances etc. in Northwest Fork Hundred in the county aforesaid.

The defendants plead *non culpa* and issue. Afterwards, that is to say on the 28th day November in the year aforesaid, at the place within contained before the Justices aforesaid came as well the within named Richard Fairclaim by his attorney, within mentioned, as the said defendants by their attorney, within mentioned, and the jurors in the said cause having been likewise summoned, now come to wit J. M., N. P., B. B., S. W., W. H., E. S., A. I., J. T., N. N., J. M., M. A., E. M. C., who being drawn, tried, and sworn to declare the truth of the issue within contained upon their oath say that Peter Hubbert late of Sussex County, deceased, [during] his lifetime, and at the time of his death, was seised in

his demesne as of fee of the premises in the declaration mentioned *prout lex postulat*. That he died on or about the 10th day, in the year of our Lord 1777, and thereupon letters of administration of all and singular the goods and chattels, rights and credits, which were of the said Peter at the time of his death, were in due form of law committed to Keziah Wright, at that time Keziah Hubbert, and Jeremiah Cannon of the County aforesaid.

And the jurors aforesaid further say that a summons in debt was issued from the Court of Common Pleas for the county of Sussex aforesaid, returnable to the February term 1782, by the said Edward Wright, plaintiff, against the said Keziah Wright and Jeremiah Cannon, administrators of the said Peter Hubbert, for the recovery of a certain debt of three hundred pounds, lawful money of the Delaware State. That the said suit so commenced as aforesaid was regularly continued until the August term next following when judgment was therein rendered *de bonis intestati.*

That a *scire facias* to revive the said judgment was issued from the court aforesaid returnable to May term, 1785; that the said *scire facias* was regularly continued until the August term in the year last aforesaid, when judgment was therein rendered.

That afterwards, to wit upon the 14th day of September in the year last aforesaid, a writ of *fieri facias* was issued out of the same court, returnable to the November term following, directed to the sheriff of the same county, commanding him to levy the debt aforesaid of the goods and chattels, lands and tenements of the said Peter Hubbert in the hands of the said administrators. At which said November term the said sheriff returned: levied as per inventory goods replevied out of the sheriff's hands, which said inventory contained personal chattels only; that the goods so levied upon as aforesaid were sold upon the said execution for the sum of £15 which was paid to the said plaintiff.

That afterwards, the ninth day of June, 1787, a further writ of *fieri facias* was issued, directed as aforesaid, returnable to the August term, in the year last aforesaid, to levy the residue of the debt aforesaid; at which said August term the said sheriff returned, "Levied upon lands as per inquisition, which the inquisitors say will not rent and are not sold for want of buyers"; and with it returned an inquisition duly held *prout* the said *fieri facias* return, and the inquisition annexed.

And thereupon, to wit the 21st day of August, 1787, a writ of *venditioni exponas,* returnable to the November term following, directed to the said sheriff, was issued, commanding him to make sale of the lands aforesaid. At which said term the said sheriff returned, "Lands sold to Edward Wright on the 5th day of November, 1787, *prout* the *venditioni exponas,"* and the return thereon indorsed.

And afterwards, to wit the 9th of May, 1788, the said sheriff, by deed poll bearing date the day and year last aforesaid, sold and conveyed to the said Edward Wright, the lessor of the plaintiff, the premises in the declaration mentioned, according to the effect of the same deed, which was duly acknowledged on 9th day of May in the year last aforesaid and *prout* the same. And that the defendants are in possession of the said premises mentioned in the *narratio.*

And the jurors aforesaid upon their oath further say that upon the 6th of September, 1785, a petition was presented to the Orphans' Court of the said county by Keziah Wright and Jeremiah Cannon, administrators as aforesaid, praying an order of the said court to sell so much of their intestate's lands as would pay his debts. Which said petition, according to the course of the said court, was granted *prout* the said petition and the indorsements thereon.

And thereupon an order was then made by the said court for the sale of all the lands of the said intestate in the county aforesaid. And that afterwards, to wit, upon 10th December, 1785, the said administrators at public [sale] duly sold to the said William Sluby and John Smith the lands mentioned in the declaration and made return of the sale to the said Orphans Court upon the 10th day of August, 1786. Which said return was by the said court, according to the course of the said court, accepted.

And afterwards, to wit, by a deed poll bearing date the 8th of March, 1788, Keziah Wright and Jeremiah Cannon, administrators of the said Peter Hubbert, in pursuance of the said order sold and conveyed the premises to the said William Sluby and John Smith, according to the effect of the said deed poll last mentioned, [which] was actually executed and delivered on the 15th day of August in the year last aforesaid, and was duly acknowledged on the 12th of September, 1788, and afterwards, within the term of one year, duly recorded.

But upon the whole matter the jurors aforesaid doubt and pray the advice of the court, and, if upon the matters aforesaid the court should be of opinion for the plaintiff, they

find for the plaintiff and assess damages to sixpence and sixpence for costs besides the costs expended, and, if the court should be of opinion for the defendants, then they find for the defendants.

Jurors' names in order.

*Joseph Miller* for plaintiff.

*James A. Bayard* for defendant.

November, 1794. *Coram* McDonough and Rodney, JJ.

*Peery* for plaintiff. That the lands in dispute were bound by plaintiff's judgment from the time it was obtained, 2 Bac.Abr. 363. This law is recognized by the legislature in an act passed 1775 for change of jurisdiction etc., whereby Maryland judgments shall bind lands in this state etc. in the same manner as judgments obtained here. That it was never intended that one court should in such manner undo the proceedings of another, but that the rule is wherever a court has once entertained a suit, no other court of collateral jurisdiction shall interfere. That therefore the Orphans Court could not prevent plaintiff's having the benefit of his judgment. A contrary doctrine would be mischievous, and cited [1] Dall. 450: judgment against *L* obtained by *W*, afterwards *L's* lands were attached and then sold by execution on the judgment, *W* was allowed to take the money.

*Bayard* for the defendant. August, 1782, plaintiff had judgment; no proceedings until some time, after which a *scire facias* was issued and then writs of execution to August, 1787. Inquisition on June 20, 1787, *fieri facias* for residue and a *venditioni exponas* and sale. A petition was proferred for an order for sale by administration September 6, 1785, and granted sale to two defendants under whom the other defendants are entitled to defend themselves September 10, 1785, and return in August 10, 1786. If it was necessary to issue out execution in order to make it a lien upon lands in the hands of an administrator, which it certainly was if they are chattels in his hands, though not necessary in other cases, the sale is good by the administrators.

Lands do not fall into the hands of executors but vest in the heirs. How then can a judgment against one man bind lands in the hands of another which must be the case here, for no law says lands are so vested in executors as to be liable to judgments against them? Without the Act of Assembly [1 Del.Laws 281], executors or administrators could not sell them to satisfy debts of the testator or intestate; it is not material that the lands should be vested in the administrator, because the Act of Assembly enables him by leave of the Orphans' Court to sell. The Act makes them personal assets in the hands of the executor. It is a

rule chattels vest in the executor, lands in the heir. What operation therefore can the judgment have upon them? If they are vested in the executor or administrator, they are chattels, but a judgment can not affect chattels etc. The case in Bacon is law. A judgment is a lien upon lands in the hands of the person against whom judgment is passed, but here judgment is against the administrator and the lands are vested in the heir. The case in Dallas was as to the relation of the judgment to the first day of term, for, if it did not relate to it, the attachment was first.

It is immaterial whether Sluby and Smith were creditors or not of the estate considering them as purchasers, for as such their money might go to pay this plaintiff. The policy of the law was that the whole estate should go to the administrators to pay debts; certainly unjust that the lands should be taken *nolens volens* to satisfy one judgment.

*Peery.* Lands in England cannot be sold for debt; by our Acts of Assembly here it can. There is a late Act [2 Del.Laws 1070,] declaring that lands of a deceased person shall not be liable in a judgment against an executor unless upon verdict or reference which shows that lands of a deceased are bound by a judgment from the date thereof. As to the case in Dallas, 16th December was the day judgment was signed, and the court declared that the judgment by relation should be a lien upon the lands even before the attachment which was first laid upon the lands.

*Bayard.* That Act was passed since this action. The legislature can make laws but have no right to pass an opinion upon the law.

After time taken to advise thereupon, judgment was given for the defendants.

An appeal was taken to the Court of Errors and Appeals for the State of Delaware by plaintiff, and bond and security given.

(The arguments on the appeal shall come hereafter, *vide* [*240*] *infra.*)